Case number 18-2316, Cheryl Wallace v. Oakwood Hospital LTD Plan et al. Oral argument not to exceed 15 minutes per side. Mr. Bachrach for the appellant when ready. May it please the court. Good morning, Joshua Bachrach. I represent the defendant appellant Reliance here. I'd like to reserve three minutes of time for rebuttal. Very well. Thank you. We're appealing from the district court's entry of judgment in favor of Ms. Wallace in this ERISA disability case. This case presented a number of legal issues for the court and the court ruled against reliance on each of those. But we think the first issue that we raise really disposes the entire case. Under ERISA, a claimant generally must appeal a denial of benefits. It's referred to as the exhaustion of administrative remedies. And it serves a number of important... Does your plan include an explicit exhaustion requirement? Does the plan document include it? Yes. Well, first, my client is not the plan administrator. They're a claim administrator. So there may be a plan document that the employer is responsible for producing. That never came out here that I'm aware of in this case. We have the policy that governs. And if you look at the ERISA regulation, what it says is that a plan, if there's a denial of benefits, the regulation is 29 CFR 2560.503-1, subsection G. It says that in a notification letter, you must include language, a description of the plan's review procedures and the time limits. So it's actually referring to the letter, not the plan document. It doesn't say you have to include what's in the plan. It doesn't say... Well, there are a few things. The other part of that statute, the next subsection, says every employee benefit plan shall establish and maintain a procedure. A procedure. It doesn't say you must include this in the plan. Our procedure here is to include it in the letter. Wait, the plan must establish a procedure, but you don't have to include it in the plan? I'm not sure I follow. The plan as an entity. As an entity rather than a plan as a document. Oh, I see what you're saying. Okay. And so the entity has established the procedure. I thought you have to include the procedure in the summary plan document. The summary plan document, according to Cigna v. Amara, the Supreme Court decision, is not a plan document. That kind of fooled all of us ERISA practitioners, but the Court held that it is not. But it does have to include the procedure, right? It has to include procedures for a claim, for submitting a claim. There are a number of... Exhaustion procedures. It might. It might. But what you have to look at is, think about it this way, Your Honor. If the appeal language is only in the plan document and there's a denial of a claim, is the claimant going to say to themselves, you know what, let me go out there and ask the employer for a copy of the plan document to see what rights I have? That's not going to happen. But they are going to see that language in that denial letter that's right in front of them. And that said you may have to. Well... It didn't say you shall. It says may, and on Monday we submitted supplemental authority. Hill v. Blue Cross, Baxter v. C.A. Muir. Those are from this Court. They are published decisions, and they rejected that very argument. They said, yes, that could be considered permissive language, but we hold that you still must exhaust under those circumstances. So that argument is gone. Let me ask you this. Isn't there an exception to the exhaustion requirement if there's no reasonable claims procedure set forth in the plan documents? And in this case there doesn't appear to be any such procedure clearly set forth in the plan documents, which would mean that here there may be an exception to the exhaustion requirement. What do you have to say about that? I disagree for two reasons. One is this Court has always recognized substantial compliance. The goal here is make sure the claimant knows what's going on. Yeah, but what about the exception? And they did. When there's no sufficient claims procedure established in the plan documents, isn't there legal authority then that in that kind of instance there might be the exhaustion, and there's an exception to the exhaustion requirement? No, Your Honor. In fact, the district court here cited to a Tenth Circuit decision, Holmes v. Colorado Coalition, 762 F. 3rd 1195. In support of its decision, the Court held the opposite. The Court held that exhaustion was required, and let me explain the facts there. Are you talking about a case from a different circuit? I understand, but it goes to this direct point, so I think it's important, Your Honor. Well, no, I'm not trying to argue with you. I'm just trying to find out what case you're talking about. Sure. Well, in this Holmes case, again from the Tenth Circuit, what they said was there were two levels of appeal. The first level of appeal was mentioned in the plan document, but the second level was not. And what the Court held was the second level of appeal was mentioned in the denial of the first appeal. And they said even though that second appeal was never mentioned in the plan document, the claimant had notice of it. The claimant could not prove any prejudice because, again, they had notice of it. Therefore, the Tenth Circuit ---- in the plan sufficient that provides notice in the plan documents. I mean, not to say that the plan isn't a good plan, but there might be a problem with the exhaustion requirement. I disagree, Your Honor. Well, I know you do. Well, I have to. But this Court in Marx specifically said substantial compliance with ERISA regulations is enough. Let me ask you this question. It's similar to Judge Clay's. The policy seems to me to be confusing, and I don't ---- and I understand that maybe you're saying there's substantial compliance when we look at the letter and the policy and these things together. Right. But the policy seems to be affirmatively misleading. It says for arbitration claims, you must exhaust. It's the only place it mentions ERISA. In legal actions, it doesn't mention exhaustion, only has the 60-day or 120-day thing, doesn't say anything about ERISA, doesn't say anything about exhaustion, doesn't say anything about appeals procedures. So if I'm looking at this as a non-lawyer, how am I supposed to make heads or tails of that? Well, the arbitration clause is not mandatory. Both parties have to agree to it. And it was never requested here. So it's out of the picture. If she had requested it, then there may be ---- No, that's not what he's asking. I'm sorry, Your Honor. I misunderstood that. He's saying you put exhaustion in one place. You don't in this instance. So when someone, a layperson is looking at that document or even a lawyer, they think it's almost affirmatively misleading if you're saying you have to exhaust there. And the reason it's affirmatively misleading is because of what the arbitration provision says. I see, Your Honor. That may be valid if there was any evidence that they actually read this and it misled them. There's zero evidence of that. So there's no prejudice here. If they didn't look at that and say, you know what, I got confused by what you were saying. I'm sorry. Is that in the regs? Like they actually have to be misled? Or is it an objective analysis about whether a reasonable layperson reading this thing would understand what they have to do? That's what the courts have said. For example, the court in Holmes said there's no prejudice alleged here. This court in Marks said when you have substantial compliance and no prejudice to the claimant. So we can't assume prejudice. It can't be. And there is none here. And a matter of fact, I will point this out. I'm wondering how clearly was the information that was provided here. For example, it's not clear whether there was a summary plan description furnished. At least we don't have in the record anything of that name. There's no summary plan description in the record. Did this plan have a summary plan description that was furnished to these people? My client's not the plan administrator who has that responsibility to produce one, to prepare and produce it. So I don't know. Would you know whether or not, well, maybe you don't know. We wouldn't. We wouldn't, Your Honor, necessarily. Not necessarily. We don't have one in the record in any event. Exactly because this claimant failed to exhaust. We would have had a lot more information, and this is going to turn into the next section, Your Honor, that there's no evidence on this transition in coverage because they didn't exhaust. And the court made a whole bunch of theories on why she satisfied the coverage requirements when there's zero evidence because there was no appeal here. And if you don't mind, I'd like to turn into that argument. Can we look at that Hartford policy because it was attached to the complaint if it's not in the administrative record? No. Can we determine whether parts, whatever, part one or part two of that transfer of insurance was satisfied? No. Perry v. Simplicity tells us that you must rely on what's in the administrative record. And you're not allowed to go beyond it, but the district court did here and assumed a lot of things, including when you look at the transfer of insurance coverage. Let me ask you this question. So you're saying we're limited to the administrative record. If we were to say we're only, we would only get to this point if we said she didn't have to exhaust, right? If we said that you don't have to exhaust, are we still bound by the administrative record or at that point is something attached to the complaint legitimate? Still bound by the administrative record because you have to look at what's in the evidence at the time of the final decision, the final decision here being the first decision because there was no appeal. So you still have to look at that. And, Your Honor, I think it's important that we do look at those requirements. I'm not sure how, without understanding of the policies, if we don't have the Hartford policy, we arguably can't figure this out. And if that's the case, assume I'm right on that, then you can't win either. No, no, it's her burden of proof, Your Honor. It's her burden of proof that the transfer of insurance coverage was in place. Correct me if I'm wrong. So she's contesting the underlying decision. And what you're saying is she has to show it's erroneous. And so if she can't get that into the record, then she can't show it's erroneous. Correct. The only underlying decision was that the preexisting condition exclusion applies. And there's no doubt that if it does, it bars this claim. She's arguing now, post hoc, that something never raised previously, that the transfer of insurance coverage language made her. Was the transfer of insurance coverage mentioned in the denial letter? No, because it wasn't. I'm sorry. Did you say you might be able to get coverage under this, or we're denying it for preexisting condition, and you don't satisfy the transfer of insurance provision? There was no need to do that because it was never raised and not obvious that she did because, Your Honor, she last worked October 2012. Our policy comes into effect January 2013. She doesn't even start to work until April of 2013. There's a several-month gap here where she's not at work. So why would we think this would apply to her, and it doesn't for the reasons that we point out brief? Let me ask you now in regard to the transfer provisions, and if the language says that you have to be an eligible person, you have to be an active full-time employee at the time of the transfer, and then the word activist never defined, the ambiguity there would have to be construed against the drafter of the language, wouldn't you think, wouldn't you say? No, we have discretion. No, no, I'm sorry. We do not have discretionary authority in this policy. It would, but this court in Turner v. Skafko said that active means actually working. It's a public decision by this court. But that doesn't capture this situation where you're using the term and you're not defining the term in the language of the, in the plan documents. It didn't there either in Turner. It didn't in Turner, and the court held that by its very meaning, active means currently active. It is that they're then working. But that goes to the different problem. And, Your Honor, I know I'm out of time, and I can save this for rebuttal. Unless you want to take some of your rebuttal time. No, Your Honor, I'll refer to this during the rebuttal. Thank you. Okay. Good morning. Good morning, Your Honor, and may it please the court. My name is J.J. Conway, and I represent the appellee, Cheryl Wallace. We obviously disagree, and we assert that the three district court rulings that are the subject of this appeal should all be affirmed. The court's orders fully comply with ERISA, its regulations, this court's precedents, and the United States Supreme Court's precedents. The Supreme Court has said repeatedly in the context of ERISA cases that you enforce the plan terms as they are written, and you don't rewrite them. And I agree wholeheartedly with that, but in our Coomer case, we said that while ERISA is silent as to exhaustion remedies, we've held the administrative scheme of ERISA requires a participant to exhaust his or her remedies prior to coming to federal court. And we've never held that you have to put them in the plan, right? So I agree you interpret them as written, but what do you do with this, where you're saying in your briefs, it seems to me your argument rests on the premise that the exhaustion requirement has to be spelled out in the plan documents,  Well, Your Honor, respectfully, in terms of the summary plan description, there is a requirement that procedures be set forth, and that is Okay, so have you provided us a summary plan description? Well, this document effectively serves as the summary plan description in this case. If you look at the Montoya case, which was Wait, what document? The certificate of insurance coverage in this case. That is effectively the summary of her coverage. It is both the standards and the certificate and proof of her insurance, and it also explains what the coverage terms are. So you're saying there's no summary plan document? There's no summary plan description other than this that is in the file. Because it's basically an insurance policy. Because it's basically an insurance policy. So we're deeming it to be an ERISA plan, but it's an insurance policy. It's an insurance policy. There was nothing else other than this policy, there's nothing else. Correct, and I think that So it doesn't exist is what you're saying. It doesn't exist insofar as this record is concerned, and I think Your Honor raises it. That's different. That doesn't say definitively whether there is a summary plan. There is no summary. We can't both talk at the same time. You're right, Your Honor. I'm sorry. That's different from saying that there is no summary plan description here. You're not saying that. I don't know if apparently you don't know or for whatever reason you're not saying categorically whether there's a summary plan description or not. We have treated this contract Well, that's not the question. The question is whether a summary plan description exists that would pertain to your client, and you're not able to say one way or the other. Well, what we are saying is this, Your Honor, that in terms of the presentation of this case and the motion to dismiss on the basis of exhaustion, this is the only plan document that Reliance brought I know you're saying that, but you're not telling us whether a summary plan description exists or not. Because the truth of the matter is Whoa, whoa, whoa, whoa, whoa. We're talking at the same time. We can't keep doing that. You can't say whether one exists or not. I cannot. Okay. Okay, so if who's burdened? If they want to take advantage of exhaustion, or you want to get exhaustion deemed to be not in effect or whatever that reg says, who has to do what in terms of the record? Given the procedural posture of this case as a ruling on a motion to dismiss, it would have been believed that the moving party would have brought in evidence that there was a summary plan description that required exhaustion separate and apart from the contract. Well, that's wrong. So I think under our case law, if they can say you didn't exhaust, and we presume there's an exhaustion requirement, if you want to defeat it under 1102, the statute, you can say, as you just argued, that the summary plan description is required to have the exhaustion requirements listed. Okay? But then you have to provide the document showing it's not listed for us to do that. Understood, Your Honor. And so it seems to me the burden's on you to provide it. The burden is on us insofar as pointing out to what the coverage terms that were provided to participants relative to their disability coverage. This was the summary of their coverage, and this was the certificate of their coverage. It was treated as the only document that explained the rights and duties of this participant under this particular plan. That is the only document that is in the record, and that is the only document that was provided in this case, and it's the only document that's in the administrative record in this case. You didn't ask for the summary plan description when the administrative record was being developed? No, Your Honor. The administrative record was produced to us pursuant to Reliance maintaining it. That's typically how we receive the record, is it's maintained at the policy administrator's place of business and then turned over. There are two unique points, though, that I also want to point out. Exhaustion is, to say that she didn't exhaust is actually a bit misleading. Reliance told her, during communications with her prior counsel, that this claim was recurrent under the Hartford, and so this precipitated a new filing of a claim, and she actually did exhaust her remedies under that policy. Those emails are a little bit confusing. I don't understand who said what to who. It seemed like her counsel agreed or brought it. Who brought it up? The person said you should go to the Hartford, and then the attorney agreed, or did the attorney bring it up? The attorney initiated the claim with Reliance. This claim started with Reliance. When the claim was denied, the attorney requested the claims file. The attorney reviewed the claims file and then sought to inquire about some of the conclusions that were based in the file itself. Within there, he communicated with them and said, I'm inclined to agree that maybe this should be processed with Hartford. There's a case called Crone v. Huron Memorial Hospital, which is from this circuit, that says when you're communicating with the plan, they have to be completely candid with you. If you're going down the wrong road, they've got to tell you. They can't be silent. In Crone, this court imposed a substantive remedy for misinformation. In this case, we're explaining that at least from a procedural standpoint, there's an extenuating fact here. And so when a lawyer contacts and asks information about the coverage, and they're silent or they provide information that's incorrect, which is that this was. The letter said you may want to appeal, and lawyers file protective appeals all the time. Understood, yes. And so if we find it's a mistake of the lawyer, then she hasn't exhausted, correct? Technically, that's correct, although I would submit that we do have the alternative arguments that we've mentioned, which is that the fact that the court had before it a number of instances in these administration of reliance contracts where they did not include this language. The Montoya case is one. The Schorsch case is another. This is a pattern of reliance not putting ERISA rights in their contract. And if you compare it with the Hartford contract that's part of. Well, I'm sorry. In the insurance policy? In the insurance policy. You're talking about this back and forth we had about what does the arbitration provision say, what does the legal action provision say, that page. Is that page the same one in these other cases? Right. Generally speaking, Your Honor, it's very similar. Montoya is the exact same contract. In the Schorsch case, and we went and actually looked at the lower court record in Schorsch, at one time reliance did have a statement of ERISA rights in that Schorsch case. And then subsequently it took it out. So we've identified three different jurisdictions, the 6th, 9th, and 7th, where they're disseminating contracts to ERISA plan participants, and it doesn't contain any statement of ERISA rights. Just as a matter of fact, you knew that there was some appeal procedure out there because counsel had used it with respect to the Hartford, and then wasn't there some indication at least, or you had given some indication that you were going to appeal to reliance and you just didn't follow through? So in terms of the Hartford, I would just make a distinction there. There is a four-page summary in the Hartford contract explaining the ERISA rights and the appeal procedures and how this is reviewed. There's nothing even that comes close to that. And as Your Honor pointed out quite correctly, if you read those two clauses together, they're inherently misleading. One says that you have to exhaust to use arbitration. The other says that you just have to wait 60 days prior to bringing suit, and the suit has to be timely. It's terribly confusing. And I disagree strenuously on the argument that claimants don't read their coverage documents. Congress didn't believe that. Congress said these documents are supposed to be written in a way that an ordinary person could understand without the benefit of counsel. So I would point out that we have not only the issue about the omission of the statement. What about the question which was after the letter came out and it says you can appeal, counsel gave some indication that he was going to appeal and then never did it, right? And so I think that's what brings us within Crone, because what happened with the confusion here was that information was disseminated that this was a recurrent claim under the Hartford policy. And if you look at the administrative record in this case, the only piece of the contract from the Hartford policy is the one that discusses recurrent claims. When you're saying information was disseminated, do you mean in the e-mails? Yes. The e-mail correspondence and also when he asked for clarification with what the plan administrator had found, which was that this might be a recurrent claim under Hartford, that set off the appealing to Hartford. The factual posture of this case is this case began with reliance. And as the court held, they were misdirected to go to Hartford and start a claims process there. And again, with respect to the exhaustion issue, typically you find cases where the claimant is avoiding their obligations, they're trying to make up excuses for it. In this case, there was active exhaustion based on information that had been provided by a fiduciary. They pursued a claim, they exhausted it, and now it's being used against them in some respects, because it was actually a legal impossibility. She couldn't have met the appeal deadlines within the reliance claim if she had to go and start with Hartford. Finally, I would just point out that we had correspondence with the General Counsel's Office of Reliance, and they said no matter what we were arguing, it wasn't going to change their position in the case. So I do think that there's a futility argument as well. Moving to the coverage issue, there are two very important points to make here with regard to coverage. The court just applied the contract terms. The court didn't go outside of the contract terms. And if you look at the transfer of insurance coverage, this is the argument that reliance continues to avoid and misses. It talks about two classes of eligible participants, those that are actively at work and those that would be actively at work but for the fact that they are sicker. And you're claiming your client's in the latter. We're in point number two. You're not in the actively managed. You're in the latter. We're not in the actively. Let me ask one question about that because I agree with you that she had insurance previously and the premiums were paid. So let me move to the third step. The third step is the total disability has to begin after the effective date, which everyone agrees is January 1st, right? Correct, yes, Your Honor. 2013. I'm sorry. You allege in your complaint that she left work on October 8th. You're now alleging, as I understand it, that she actually left work on October 12th. The defendant denied that she left work on October 8th in their answer and said she left on October 12th. But they're now claiming that she left on October 8th. Do I have that right? And what is going on? Your Honor, that was an oversimplification of the case in the pleading, which was a mistake. October 8th was her last date of work. She worked a full day on October 8th. And then as the indication from the lower court record, she was a nurse. She had worked long shifts. She had several days off. And then her next regularly scheduled work day would have been the 12th. So her regularly scheduled work day. So does her disability begin on the 12th? The disability began on the 12th. That was when she submitted the claims. Disability, as the McKay case, is not a term of art. It depends on what the contract terms are. Oh, I understand. So in this particular case, she was- It's critical when it begins. For purposes of whether or not she has coverage under the park. But the problem is that the district court didn't do fact-finding on those kinds of questions to determine if she was covered under the policy at the time of transfer and whether she was totally disabled, as to what dates and that kind of thing. One point I would make is during the motion to dismiss practice, Hartford was a party to this case. They put in their denial letter. They put in their contract. And they explained that coverage lasted through January 1st of 2013. So the court had that in the backdrop from prior rulings that it had made in this case. So then when Reliance started making arguments- Can I ask you a follow-up to Judge Clay's question? Because it seems to me where you're alleging the 8th and they're alleging the 12th, and now it's different, I get it. But the finding on that date seems critical to me, and the district court never did any fact-finding on it. I think that is correct, Your Honor. I think what happened is by the time it got to the merits briefings, the issue was resolved. Both sides had agreed based on the pleadings. If you look at Reliance's answer to the complaint, they say the 12th. If you look at- Did they accept that at the briefing stage? They argued that it was the 12th at the briefing stage. Okay, well, I'll ask them if they agree. Just to clarify, I'm sorry. So we can look at that stuff that's not in the administrative record? The courts are allowed to look at that and make this determination on the transfer of insurance provision? I would think that under a de novo review where this is an issue and both of the parties have been before the court, and these are before the court's records, and arguments are being made in this case- But aren't we reviewing ultimately the plan administrator's decision, not making our own? You are, but in this case, the decision is just whether it's correct or not. There's no deference to the plan administrator in this context. And so in this particular instance, when Reliance was arguing about what the Hartford policy said, we thought that we could respond and argue what the Hartford policy said as well, and also point to what Hartford's denial letter was, is that the coverage- If we excuse a failure to exhaust, does that change anything about the record and what we are allowed to look at? I wouldn't think so. I don't think that that's going to have an impact on the exhaustion issue per se based on the facts of this case. Okay. Thank you. Thank you. Any rebuttal? Thank you, Your Honor. Briefly on the exhaustion issue, I don't recall which one of the judges mentioned this, but yes, there was a September 25, 2014 letter from prior counsel, and that was one month after the denial of benefits. And counsel stated, I've been retained by Cheryl Walls to handle the appeal of your denial. Before we actually formally file our appeal, I would request a copy of the entire claim file. Counsel knew they had to appeal. Was it after they had been to the Hartford? No. So if you read his brief, he says initially, when the claim was initially filed, Reliance told them to go to Hartford. Initially. They went through the entire process here with Reliance. They continued to say, you're still on the hook, Reliance. And they got a decision letter. So they can't claim that there was any confusion on their part. And counsel here confirmed, we intend to. Now, why didn't he? Five days after this letter was sent, he gets a copy of the claim file. He reviewed the claim file. You know what? He agreed. So the e-mail exchange with the person at Reliance about whether they should go to the Hartford happened after this denial letter came out in August of 2014? No, no. It was at the beginning of the claim handling. But she still said, I'm pursuing my claim. And we still made a decision, and we still told her you have to appeal that decision if you think we're liable. But I'd like to – Did somebody at Reliance tell her or give some indication that Hartford was the better road to go? We said we believe. We never give legal advice, ever. But you are a fiduciary, so you're supposed to. Well, we're not a fiduciary in respect to – you're right. We can't give misinformation. The exact language, I don't recall off the top of my head. It may have said you may want to. We believe it is. But the claimants always believe what we say. We wouldn't be in court if they did. She obviously disagreed. But I really feel it's important to address the transfer of insurance coverage in the brief amount of time I have left because there is no record to support any of those conclusions reached by the court. There are three elements that have to be made. You have to be covered under the Hartford policy on the transition date. She wasn't. The court said, well, she was disabled beforehand, therefore she was covered on the transition date. But under the Hartford policy, you have to be disabled, means unable to perform the duties of your occupation for 180 days. And she never met that definition, so she wasn't. And, by the way, that Hartford policy wasn't in the record. So it shouldn't have been referred to anyways. It's not in the administrative record. It's not in the administrative record, correct. Just out of curiosity, your date changes as well. Is it October 8th or October 12th? It was never determined. That was part of the problem here, too, is, you know, there are facts that just weren't. Well, I agree that's a problem, but I'm just asking which date are you all asserting now? Based on the pleading I look at. Yeah, well, it does. And we, in the brief, actually don't even specify it because we never really got firm information on it. But, Your Honors, if I may continue briefly. Thank you, Your Honor. The payment of premiums, Judge, you had said that you agreed that that was proven, but I don't think it ever was. There was no evidence that premiums were paid for her. Because why at the time of the transfer? Because, first of all, why would the employer pay premiums for either the Hartford policy in December or the Reliance policy in January when this person's never worked since October? So they wouldn't be paying premiums for her specifically. So there's no evidence of that in the administrative record. And so what the court did is it surmised, and it's her burden of proof, by the way, to prove all these elements that this transfer of coverage applied. And there was no evidence. Why? Because she didn't exhaust, at the very least. If you feel that she wasn't required to exhaust, and I strongly disagree, if you feel she wasn't required to exhaust, this has to be remanded so that there can be a development of the record on whether the transfer of insurance coverage applies. Thank you, Your Honor. Thank you very much. And the case is submitted. After the table is vacant, you may call the next hearing.